UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------
LAUREN A. SMITH,

                                Petitioner,

           vs.                                    9:08-CV-351
                                                  (GLS)(ATB)

ROBERT ERCOLE, Superintendent,

                                Respondent.
--------------------------------------------------------------------------
LAUREN A. SMITH, Petitioner, *pro se*
THOMAS B. LITSKY and ASHLYN DANNELLY, AAGs, for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This matter was referred for Report and Recommendation by the Honorable

Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rules N.D.N.Y. 72.3(c).  The case was re-assigned to me on January 4, 2010,

following the retirement of Magistrate Judge Gustave J. Di Bianco.

       Petitioner brings this action challenging a judgment of conviction from Oneida

County Court.  On February 25, 2004, petitioner was convicted, following a jury trial,

of Attempted Murder in the First Degree; Assault in the Second Degree; Criminal

Possession of a Weapon in the Second Degree; Criminal Possession of a Weapon in

the Third Degree; and False Personation.  Petitioner was sentenced on April 20, 2004

to serve an indeterminate prison sentence of from 23 years to life for attempted

first-degree murder and lesser, concurrent sentences on the other counts.  He is

presently incarcerated at the Green Haven Correctional Facility, pursuant to the

judgment of conviction.

The Appellate Division, Fourth Department affirmed petitioner's conviction (Ex. E, Dkt. No. 20-5)[1], and leave to appeal to the New York Court of Appeals was denied (Ex. H, Dkt. No. 20-8). *People v. Smith*, 32 A.D.3d 1318, 821 N.Y.S.2d 723 (4th Dept.), *lv. den.*, 7 N.Y.3d 929, 827 N.Y.S.2d 698 (N.Y. 2006) (table). On February 20, 2008, petitioner filed a *pro se* motion to vacate his convictions under N.Y. CRIM. PROC. LAW § 440.10 (Ex. I, Dkt. No. 20-9), which was denied by in the Oneida County Court on May 5, 2008 (Ex. K, Dkt. No. 20-11). Petitioner sought leave to appeal this decision from the Appellate Division (Ex. L, Dkt. No. 20-12), which was denied on December 18, 2008 (Ex. M, Dkt. Nos. 20-13).

Lauren A. Smith's initial pro se petition, styled as a pleading under 28 U.S.C. § 2241, was dated March 5, 2008. It was filed on or about March 27th, about a month after he filed his section 440.10 motion, and well before that motion was decided. The original petition alleged that: (1) the evidence was legally insufficient to establish that petitioner was guilty of attempted first-degree murder; (2) the trial court's jury instructions under N.Y. PENAL LAW § 265.15(4), regarding a presumption of intent to use a weapon unlawfully, were erroneous; (3) the evidence was legally insufficient to establish that petitioner was guilty of third-degree criminal possession of a weapon; and (4) petitioner's indeterminate sentence of 23 years to life was unduly harsh. (Pet., Dkt. No. 1).

By Order dated April 15, 2008, Magistrate Judge Di Bianco advised petitioner

---

[1] The state court record was filed as Dkt. No. 20. This court will refer to the state court record, other than the transcripts of court proceedings, by the exhibit numbers assigned to it by the respondent.

that he had improperly filed his petition under 28 U.S.C. § 2241, and that petitioner could consent to convert the action to one under 28 U.S.C. § 2254. (Dkt. No. 4). By letter dated April 28, 2008 (Dkt. No. 5), petitioner consented, and Magistrate Judge Di Bianco converted petitioner's action to one under 28 U.S.C. § 2254 by Decision and Order dated May 27, 2008 (Dkt. No. 6).

By letter dated June 5, 2008, petitioner requested a stay so that he could continue to try to exhaust the claims raised in his section 440.10 motion. (Dkt. No. 7). By Order dated June 23, 2008, the Court granted petitioner's application for a stay. (Dkt. No. 8). By motion dated January 22, 2009, petitioner sought to lift the stay and requested leave to add an additional claim alleging ineffective assistance of trial counsel. (Dkt. No. 10). In that motion, petitioner alleged that his trial counsel was ineffective in five specified ways. (Dkt. No. 10 at 2-3).

By Decision and Order dated February 23, 2009, Judge Di Bianco lifted the stay, granted petitioner leave to amend the petition, and directed respondent to answer the original petition, as well as the additional claims of ineffective assistance of counsel asserted in petitioner's motion. (Dkt. No. 11). Respondent filed an answer (Dkt. No. 18), a memorandum of law (Dkt. No. 19), and the pertinent state court records. (Dkt. No. 20). Respondent argues that some of petitioner's claims are procedurally barred and that the rest should be denied on the merits.

On February 22, 2010, petitioner filed a traverse, which referenced additional claims of constitutional violations that were not included in the original petition or the amendment. (Dkt. No. 26). On March 16, 2010, Lauren A. Smith filed a letter motion

to further stay the habeas proceedings to afford him the opportunity to exhaust additional claims in state court, *e.g.* by filing a writ of error *coram nobis* to raise new allegations of ineffectiveness of his appellate counsel.  (Dkt. No. 29).  On April 9, 2010, this court denied that motion, noting that petitioner had already had the benefit of a stay to exhaust state remedies and an opportunity to amend his petition, and that any new habeas claims would likely be barred by the applicable statute of limitations.  (Dkt. No. 31).  On April 12, 2010, apparently before he was served with the court's order of April 9th, petitioner filed a supplemental traverse (Dkt. No. 32) noting that he was prepared to file a writ of error *coram nobis* to raise the new allegations about his appellate counsel.

For the reasons set forth below, this court will recommend denial of the claims raised in the original petition and the court-authorized amendment.  The court will not consider the additional and untimely claims raised by petitioner in his traverse and supplemental traverse.

## I.   **Relevant Facts and Procedural History**

### A.   **The Arrest and Indictment**

On July 22, 2003, Utica Police Officer Charles Kelly initiated a traffic stop of a car being driven by petitioner Lauren Smith.  Petitioner was unable to produce a license and provided a false name.  After Officer Kelly directed petitioner to get out of the car, Smith started to flee.  When the officer physically restrained Smith, he pulled a .45 caliber semi-automatic pistol.  A struggle ensued during which the gun was, at various times, pointed at Officer Kelly's stomach, chest, and head.  At one point,

petitioner tugged at Kelly's holstered service gun, but was unable to draw it due to the holster's safety features. Petitioner and Kelly wrestled until other officers arrived and placed petitioner in handcuffs.

Petitioner's weapon contained a magazine with seven live rounds, and an eighth bullet in the gun's chamber. During the fight with petitioner, Officer Kelly pushed back on the slide of the weapon which may have prevented it from being fired. The serial number on the gun was obliterated. As a consequence of Officer Kelly's altercation with petitioner, Kelly suffered severe pain in his wrist, a torn labrum in his right shoulder, and various abrasions.

An Oneida County grand jury returned an indictment charging petitioner with Attempted Murder in the First Degree (N.Y. PENAL LAW §§ 110, 125.27 (1)(a)(i)(b)); Assault in the Second Degree (N.Y. PENAL LAW § 120.05(3)); Criminal Possession of a Weapon in the Second Degree (N.Y. PENAL LAW § 265.03(2)); Criminal Possession of a Weapon in the Third Degree (N.Y. PENAL LAW § 265.02(3)); and False Personation (N.Y. PENAL LAW § 190.23). Petitioner's trial before County Court Judge Michael L. Dwyer, began on February 23, 2004.

### B.    The Trial

#### 1.    The People's Case

On the morning of July 22, 2003, Officer Kelly was patrolling alone in downtown Utica in a marked car, and was wearing his uniform. (Trial Transcript ("TT.") at 313). He observed a maroon Ford Escort, which did not have a front license plate, being driven by a man who was not wearing his seatbelt. He decided to

turn his patrol car around and execute a traffic stop.  (TT. at 314).  As Officer Kelly

followed the car down several streets, he put on his emergency lights and then blew

his air horn, at which point the driver turned onto Lansing Street and stopped in the

middle of the road.  (TT. at 315-316).

Officer Kelly approached the other vehicle and asked the driver for his license

and registration.  The driver replied that he had a license, but did not have it with him.

(TT. at 317-318).  Officer Kelly asked the driver to identify himself, and he gave the

name Anthony Tyrone and a date of birth.  (TT. at 319).  Officer Kelly returned to his

patrol car to enter that information into his mobile data computer, which indicated that

no one with that name and date of birth had a New York driver's license.  (TT. at 320).

Officer Kelly testified that he walked back to the maroon car and told the driver

that there was no license in New York under the name and date of birth he provided.

The driver then stated that his name was Tyrone Anthony and gave a slightly different

date of birth.  (TT. at 321).  Officer Kelly then returned to his patrol car and checked

the new information but, again, found that the second name and date of birth provided

by the driver were not in the drivers' license data bank.  (TT. at 322-323).  Officer

Kelly said that he then returned to the maroon car and told the driver that neither of

the names he had given matched with a license in the State of New York.  (TT. at

323).

Officer Kelly testified that he told the driver that he was going to take him into

custody for vehicle and traffic violations and directed him to step out of the car.  (TT.

at 325).  At the trial, Officer Kelly identified the driver as being the petitioner, Lauren

A. Smith. (TT. at 356). Officer Kelly directed the petitioner to face the rear of the car and to place his hands on the trunk. As Officer Kelly was patting him down and reaching for his handcuffs, he felt an object in the petitioner's rear pocket, which turned out to be a cell phone. (TT. at 325-326). By then, a woman had appeared on the scene, who stated that she was the mother of the petitioner's child, and Officer Kelly handed her the cell phone and told her to call the owner of the car to come down and get it. (TT. at 327-328).

Officer Kelly testified that he then noticed that the petitioner was fidgeting in his waistband. (TT. at 328). Officer Kelly grabbed the petitioner's left hand to handcuff him, and the petitioner pushed off of the car and began running down the street. (TT. at 329). Officer Kelly gave chase and grabbed the petitioner by his shirt. Smith then spun around so he was facing the officer. (TT. at 329-330). The officer testified that he saw that the petitioner was clutching a large firearm in both hands. (TT. at 330-331). Officer Kelly immediately grabbed and pushed back on the top of the slide of the gun with his right hand and held the petitioner with his left hand. (TT. at 331-332). The officer testified that he was trained to push back on the slide of an automatic weapon because that should prevent the gun from firing. (TT. at 333).

Officer Kelly testified that, as he struggled with the petitioner, he pointed the gun at the officer's chest and stomach and resisted Officer Kelly's efforts to push the gun away. (TT. at 333-334). After grappling on their feet, both men fell to the ground, on the grassy area under a tree. (TT. at 335). Officer Kelly testified that he maintained pressure on the slide of the gun so that it would not go off. (TT. at 335).

7

As they wrestled on the ground, the gun was pointed, at different times, at Officer Kelly's chest and head. The officer continued to try to push the weapon so that it was not pointing at him, but the petitioner, who held the gun in both hands, thwarted those efforts. (TT. at 335-336). Joseph Yaletchko, Ellen Pugh, and April Davis witnessed the struggle between petitioner and Officer Kelly from nearby houses. (TT. at 239-240, 262-263, 412-415). Yaletchko and Davis testified that they saw the two men fighting over a black object. (TT. at 263, 412-413).

When the gun was facing towards his head, Officer Kelly confirmed that it was a real, semi-automatic handgun and started to yell for help. He also attempted to summon back-up using his mobile radio, which had been ripped off of his belt and was lying on the ground. (TT. at 336-337). As the struggle over the gun continued, Officer Kelly testified that he was able to push it so it pointed into the dirt. (TT. at 338). Officer Kelly testified that he heard sirens in the background, and knew that help was coming. Just then, he said, he felt a tug at his own service weapon and saw the petitioner's hand on the grip of that weapon. (TT. at 339). The service holster had various safety features that prevented the petitioner from removing Officer Kelly's gun from the holster, although the top snap on the holster was undone. (TT. at 340-341). Eyewitness April Davis testified that she saw petitioner "trying to get the officer's gun" out of its holster. (TT. at 414).

With sirens blaring in the background, the petitioner started to stand up, and he returned both of his hands to his gun. Officer Kelly said that he then stood up and noticed that the magazine on petitioner's gun had fallen out. (TT. at 342-343). As the

8

men continued to struggle, the gun fell from both of their hands and landed in a grassy area.  Officer Kelly testified that the petitioner then started to try to flee.  (TT. at 344). According to Robert Scully, the first back-up police officer to arrive, he observed the petitioner trying to cross Lansing Street, with Officer Kelly holding on to him or in close pursuit.  (TT. at 231-232).  Officer Scully tackled the petitioner and, with the assistance of Officer Kelly and other back-up officers who had arrived, eventually subdued and handcuffed him.  (TT. at 214-215, 252-253, 345).  Officer Scully testified that, as the petitioner was being handcuffed, he said that he had dropped the magazine, and that he was going to give it to the officer.  (TT. at 216, 233).  The petitioner, who was still combative, was then placed in the rear of a patrol car.  (TT. at 216, 253-256).

Officer Loriann Cozza testified that, when she arrived at the scene, she secured a handgun and magazine she found lying separately on the ground in a grassy area between the sidewalk and the curb.  (TT. at 285-286).  The gun had a .45 caliber round in the chamber and the safety switch was off, meaning that the weapon was in the firing position.  (TT. at 288-290).  The magazine had some dirt on the bottom and was fully loaded with .45 caliber ammunition.  (TT. at 286-287).  Officer Scully, who photographed the scene after the arrest, testified that there was dirt on the bottom of the magazine and on the slide of the gun. (TT. at 221-222).

At the police station, Officer Kevin Voce found seven live .45 caliber rounds in the magazine secured by Officer Cozza.  (TT. at 298-299).  He then test fired the gun and found that it was operable, both with and without the magazine inserted.  (TT. at 302-303).  Officer Voce testified that the serial number had been scratched off.  (TT.

at 304).  Daniel Sullivan, the pistol license officer for Oneida County, testified that the defendant did not have a pistol permit.  (TT. at 377-378).

After the incident, Officer Kelly was taken to the emergency room at St. Elizabeth's Hospital.  He testified that he had severe pain in his wrist and right shoulder and abrasions on his nose, right hand and both knees. (TT. at 348).  X-rays showed no broken bones or fractures.  (TT. at 350).  However, further tests showed that Officer Kelly had a torn labrum on his right shoulder.  (TT. at 351).  He elected not to have surgery on his shoulder.  (TT. at 352).  Officer Kelly was placed on light duty until September 20, when he returned to active duty.  (TT. at 351).

### 2.    Petitioner's Case

Petitioner's trial counsel, from the Oneida County Public Defenders Office, made various objections to the government's case and actively cross-examined government witnesses.  He presented a defense through his opening statement and closing argument.  However, counsel did not call any defense witnesses.

### C.    The Verdict and Sentencing

On February 25, 2004, the jury found petitioner guilty on all charges.  On April 20, 2004, petitioner was sentenced to indeterminate prison sentences of from 23 years to life imprisonment for attempted first-degree murder, and two and one-third to seven years for third-degree criminal possession of a weapon.  The sentencing court also imposed determinate prison terms of seven years, with three years of post-release supervision, for second-degree assault; ten years, with five years of post-release supervision, for second-degree criminal possession of a weapon; and one year for false

10

impersonation.  (Sentencing Transcript at 7-8. Dkt. No. 20-15 at 136-137).

### D.    Petitioner's Direct Appeal

An appellate attorney from the Oneida County Public Defender's Office (not trial counsel), filed a brief in the Appellate Division, Fourth Department, on petitioner's behalf.   Petitioner argued that: (1) the evidence was legally insufficient to establish that he was guilty of attempted first-degree murder and third-degree criminal possession of a weapon; (2) the trial court's jury instructions under N.Y. PENAL LAW § 265.15(4), regarding a presumption of intent to use a weapon unlawfully, were erroneous; and (3) petitioner's indeterminate sentence of twenty-three years to life for the attempted murder of a police officer was unduly harsh.  (Ex. A., Dkt. No. 20-1).

On September 29, 2006, the Appellate Division unanimously affirmed petitioner's judgment of conviction and sentence.  (Ex. E, Dkt. No. 20-5).  *People v. Smith*, 32 A.D.3d 1318, 821 N.Y.S.2d 723 (4th Dept. 2006).  The appellate court rejected, on the merits, petitioner's contention that the evidence was legally insufficient to support his conviction of attempted first-degree murder.  *Id.*, 32 A.D.3d at 1319.

The court further found that petitioner "failed to preserve," for appellate review, his contention that the jury charge with respect to the second-degree criminal possession of a weapon charge was misleading, confusing and should have specified that "'the [petitioner] was not required to present any evidence in order for the jury to reject the inference' of intent to use the weapon unlawfully."  *Id.* at 1319 (citing  N.Y. CRIM. PROC. LAW  § 470.05(2)).  In any event, the court found petitioner's contention

was "without merit." *Id*. at 1319-20 (citation omitted).

Next, the Appellate Division found that petitioner "failed to preserve" for appellate review his claim that the evidence was legally insufficient to support the conviction of third-degree criminal possession of a weapon on the ground that the People failed to establish petitioner's knowledge that the petitioner's gun was defaced. *Id*. at 1320.  In any event, the court found that petitioner's contention "lack[ed] merit." *Id*.  Finally, the court found that petitioner's sentence was not unduly harsh or severe. *Id*.

Petitioner sought leave to appeal all of the issues that he raised in the Appellate Division.  (Ex. F, Dkt. No. 20-6).  On December 21, 2006, a judge of the New York Court of Appeals denied petitioner leave to appeal.  (Ex. H, Dkt. No. 20-8).  *People v. Smith*, 7 N.Y.3d 929, 827 N.Y.S.2d 698 (N.Y. 2006) (table).

### E.    Petitioner's Motion to Vacate the Judgment

Petitioner filed a *pro se* motion to vacate under N.Y. CRIM. PROC. LAW § 440.10, dated February 20, 2008, in Oneida County Court.  (Ex. I, Dkt. No. 20-9). Petitioner alleged that his trial counsel was ineffective because he: (1) did not properly prepare for trial; (2) only interviewed petitioner once for 15 to 20 minutes; (3) did not interview or call Officer Kelly's orthopedic surgeon; (4) did not interview Barbara Arroyo and her sibling, who were present during the incident; (5) did not employ an investigator to interview potential witnesses who would rebut the assault charge; (6) did not object to certain rulings to preserve issues for appellate review; (7) did not adequately cross-examine Joseph Yaletchko and Officer Kelly; (8) did not object to a

12

discriminatory jury selection process; and (9) did not object to the introduction of highly damaging hearsay testimony or a hearsay statement.  (*Id.*).  Petitioner also complained, in passing, that the trial evidence was insufficient to establish his guilty of Attempted Murder in the First Degree.  (Ex. I, Dkt. No. 20-9 at 20).[2]

In a Decision and Order dated May 5, 2008, the County Court denied petitioner's motion, without a hearing, based on the court's review of the trial record, as well its recollection of defense counsel's performance.  (Ex. K at 4, Dkt. No. 20-11).  The County Court found that defense counsel provided petitioner with meaningful and effective representation.  (Ex. K at 3-4).  As to petitioner's general claim of ineffective assistance of counsel, as well as petitioner's individual claims of ineffective assistance of counsel that were reflected in the record of the trial, the court denied those claims under  N.Y. CRIM. PROC. LAW  § 440.10(2)(c) because they could have been raised on direct appeal.  (Ex. K at 5)

The County Court also denied petitioner's claim that the evidence was insufficient to establish petitioner's guilt with respect to Attempted Murder in the First Degree.  The court found that, under  N.Y. CRIM. PROC. LAW  § 440.10(2)(a), it was required to deny a motion to vacate a judgment of conviction on ground or issued that were previously determined on the merits upon an appeal.  (Ex. K at 5).  On December 18, 2008, the Appellate Division, Fourth Department, denied petitioner leave to appeal the denial of his section 440.10 motion.  (Ex. M, Dkt. No. 20-13).

---

[2] Because of inconsistent pagination in petitioner's various pleadings, the page numbers cited are the page numbers assigned by the CM-ECF system, which appear in the electronic header of the document.

## II.    **Applicable Law**

### A.    **The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).[3] Under §2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*,

---

[3] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-113 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.*

530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.     Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

### C.     Procedural Bar

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue in a case if a state court decision "'rests on a state law ground that is independent of the federal question and ***adequate*** to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007)

15

(quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added).  This rule

applies whether the independent state law ground is substantive or procedural. *Id*

There are certain situations in which the state law ground will not be considered

"adequate":  (1) where failure to consider a prisoner's claims will result in a

"fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750

(1991); (2) where the state procedural rule was not "'firmly established and regularly

followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-424 (1991); *James v. Kentucky*, 466

U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following

the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v.

Sykes*, 433 U.S. at 87.  In *Garvey v. Duncan*, the Second Circuit stated that, in certain

limited circumstances, even firmly established and regularly followed rules will not

prevent federal habeas review if the application of that rule in a particular case would

be considered "exorbitant."   *Garvey v. Duncan*, 485 F.3d at 713-714 (quoting *Lee v.

Kemna*, 534 U.S. at 376).  If petitioner has failed to exhaust his state court remedies,

but no longer has remedies available in state court, then the claims are "deemed"

exhausted, but may also be procedurally barred.  *Bossett v. Walker*, 41 F.3d at 828

(citing *Grey v. Hoke*, 933 F.2d 117, 120-121 (2d Cir. 1991)).

A state prisoner who has procedurally defaulted on a federal claim in state court

may only obtain federal habeas review of that claim if he can show both cause for the

default and actual prejudice resulting from the alleged violation of federal law, or if he

can show that he is "actually innocent."  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir.

2008) (internal quotation and citations omitted).  "Cause" exists if "the prisoner can

show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007), *cert. denied sub nom*. Murden v. Ercole, 552 U.S. 1150 (2008); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).[4] A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v. Delo*, 513 U.S. at 316, 327-328.

### D.    Reaching the Merits of Unexhausted Claims

The habeas statute provides that a petition may be denied on the merits, notwithstanding the failure to exhaust state court remedies, assuming there is no procedural bar. 28 U.S.C. § 2254(b)(2). In the absence of specific guidance from the Second Circuit, lower courts in this circuit have applied two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to

---

[4] "Actual innocence" requires not legal innocence, but factual innocence. *Murden v. Artuz*, 497 F.3d at 194.

exhaust.  *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 n.1 (W.D.N.Y. 2007).
A majority of lower courts use a "patently frivolous" standard, while others use a
"non-meritorious" standard, dismissing a claim when it is "perfectly clear that the
[petitioner] does not raise even a colorable federal claim."  *Id.* (collecting cases).[5]

### E.    Insufficiency of Evidence

The Due Process Clause of the Fourteenth Amendment prohibits conviction
"except upon proof beyond a reasonable doubt of every fact necessary to constitute the
crime with which [the defendant] is charged."  *In re Winship*, 397 U.S. 358, 364
(1970).[6]  Consequently, a state prisoner "is entitled to habeas corpus relief if it is
found that upon the record evidence adduced at the trial no rational trier of fact could
have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S.
307, 324 (1979).  In evaluating sufficiency, the evidence must be viewed in the light
most favorable to the prosecution.  *Id*. at 318-319.

A habeas court must defer to the assessments of the strength of the evidence and
credibility of the witnesses that were made by the jury.  *Maldonado v. Scully*, 86 F.3d
32, 35 (2d Cir. 1996).  Guilt beyond a reasonable doubt may be established entirely by

---

[5] In finding that a "non-meritorious" standard was more appropriate, one court referenced
Justice Steven's concurrence in the Supreme Court decision in *Duncan v. Walker*.  *Basnight v. Keane*,
No. 99-CV-5907, 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001).  In Duncan, Justice Stevens
stated that "the AEDPA gives a district court the alternative of simply denying a petition containing
unexhausted but nonmeritorious claims."  *Duncan v. Walker*, 533 U.S. 167, 183 (2001) (emphasis
added).

[6] When considering the sufficiency of the evidence of a state conviction, a habeas court
must look to state law to determine the elements of the crime.  *Ponnapula v. Spitzer*, 297 F.3d
172, 179 (2d Cir. 2002).

circumstantial evidence, *Id.,* and this evidence must not be reviewed piecemeal, but rather as a whole. *United States v. Khan*, 53 F.3d 507, 513 (2d Cir.1995). Hence, a petitioner bears a "very heavy burden" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence. *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993)).

### F.    Ineffective Assistance of Counsel

The general standard for ineffective assistance of counsel, which applies to both trial and appellate counsel, was articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-696 (1984); *McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) (*Strickland* standard also applies to effectiveness of appellate counsel). This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness, and that prejudice resulted because there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694.

When assessing counsel's performance, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) (quoting *Strickland*, 466 U.S. at 689). Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *McKee v. United States*, 167 F.3d at 106 (citing *Strickland*, 466 U.S. at 689).

In evaluating the prejudice component of *Strickland*, a "reasonable probability" that the outcome of the proceeding would have been different means "a probability

sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694.

Unlike the performance determination, the prejudice analysis may be made with the

benefit of hindsight. *McKee v. United States*, 167 F.3d at 106-107 (citing, *inter alia*,

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). *See also Mickens v. Taylor*, 535 U.S.

162, 166 (2002) (explaining the limited exceptions to general rule requiring showing

of prejudice). As the Supreme Court in *Strickland* stated:

> In making [the prejudice] determination, a court hearing an ineffectiveness
> claim must consider the totality of the evidence before the judge or jury. . . .
> Some errors will have had a pervasive effect on the inferences to be drawn from
> the evidence, altering the entire evidentiary picture, and some will have had an
> isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported
> by the record is more likely to have been affected by errors than one with
> overwhelming record support.

*Strickland*, 466 U.S. at 695-696.

## III.   Application

### A.   Sufficiency of Evidence of Attempted Murder Charge

Respondent has conceded the petitioner exhausted his claims that the evidence

was legally insufficient with respect to the attempted murder charge, by raising that

issue on direct appeal and then seeking leave to appeal the adverse decision of the

Appellate Division to the Court of Appeals. (Resp. Memo. of Law at 16, Dkt. No. 19).

Hence, this court must review this claim on the merits and determine whether the

decision of the Appellate Division was "contrary to . . . clearly established Federal

law" or "involved an unreasonable application . . . of clearly established Federal law"

under 28 U.S.C. § 2254(d)(1).

To establish guilt of Attempted Murder in the First Degree (N.Y. PENAL LAW §
110, 125.27(1)(a)(i) & (b)), the People must establish that the defendant, with intent to
cause the death of another person, attempted to cause the death of a police officer, who
was at the time of the attempted killing engaged in the course of performing his
official duties.  The People must prove further that the defendant knew or reasonably
should have known that the intended victim was a police officer; and the defendant
also must be more than eighteen years old at the time of the commission of the crime.
A defendant commits criminal attempt when, "with intent to commit a crime, he
engages in conduct which tends to effect the commission of such crime."  (N.Y.
PENAL LAW §§ 110).  The primary issue with respect to this charge at the trial of the
petitioner was whether he acted with the necessary intent to cause the death of Officer
Kelly, or whether he was only trying to flee.  (TT. at 433-434).

The Appellate Division found that the People presented sufficient evidence
establishing that petitioner "had the specific intent to commit murder and engaged in
conduct to carry out that intent."  *People v. Smith*, 32 A.D.3d at 1319.  Indeed, as
discussed above, the prosecution presented evidence that the petitioner pointed a
loaded handgun at close range at the chest, stomach, and head of a uniformed police
officer, and resisted Officer Kelly's desperate efforts to push the gun away.  The
evidence supported the prosecution theory that the gun failed to fire only because
Officer Kelly pushed back on the slide, thereby disabling the weapon.  Inspection and
testing of the gun after the incident revealed that it was operable and fully loaded,
including a bullet in the chamber, and that the safety was in the "ready fire" position.

(TT. at 288-289, 298).  When the petitioner was not able to get full control of his gun from Officer Kelly, he then tried to remove the officer's service weapons from his holster.  The testimony of Officer Kelly about his encounter with the petitioner was largely corroborated by the testimony of three civilian eyewitnesses–Joseph Yaletchko, Ellen Pugh, and April Davis.   (TT. at 239-240, 262-263, and 412-415).

As the Appellate Division correctly noted, petitioner's act "need not be 'the final one towards the completion of the offense' . . . , but it must 'carry the project forward within dangerous proximity to the criminal end to be attained.'"  *Id.* (citing *People v. Bracey*, 41 N.Y.2d 296, 300, 392 N.Y.S.2d 412 (N.Y.), *rearg. denied*, 41 N.Y.2d 1010, 395 N.Y.S.2d 1027 (1977)).  The Appellate Division's decision that the evidence was sufficient to establish that petitioner, with intent to kill, attempted to murder officer Kelly, was not contrary to or, an unreasonable application of clearly established federal law.  *See, e.g., People v. Chen*, 217 A.D.2d 637, 629 N.Y.S.2d 771 (2d Dept. 1995) (evidence that the defendant, while in police custody, suddenly pulled a loaded weapon from his waistband, placed his finger on the trigger and pointed it at the arresting officers' mid-sections was legally sufficient to establish the elements of attempted murder in the first degree) .

### B.    Sufficiency of the Evidence of the Defaced Weapon Charge

The petition claims that the People presented no evidence that the petitioner knew that the weapon he possessed had been defaced, and thus the evidence that he committed Criminal Possession of a Weapon in the Third Degree was constitutionally insufficient.  Respondent concedes that petitioner exhausted this claim by raising it on

22

his direct state appeal.  However, respondent argues that the claim is procedurally barred because, as the Appellate Division determined, petitioner did not preserve this issue on appeal by making a specific and timely objection at trial, as required by N.Y. CRIM. PROC. LAW § 470.05(2).  (Resp. Memo. of Law, Dkt. No. 19 at 23 (citing *People v. Smith*, 32 A.D.3d at 1319).   Although this is considered a procedural default in state court, this court must consider whether that procedural default was "adequate" to support the Appellate Division's finding and whether the Appellate Division applied the procedural rule in an "exorbitant" manner.

### 1.   Procedural Bar

Under New York law, there are two ways to preserve a question of law for appeal.  The first method is through an objection at trial by a party who later claims error.  *Garvey*, 485 F.3d at 714 (citing N.Y. CRIM. PROC. LAW § 470.05(2)).  The second way to preserve an issue for appeal is for the trial court to make an express ruling regarding a particular issue.[7]  *Id.*  The court in *Garvey* discussed the kind of protest or objection at trial that would be adequate to preserve a particular claim, citing New York law for the proposition that, in order to preserve an issue for appeal, the defendant must "specifically focus on the alleged error."  *Id.* at 714-715 (citing *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 174 (N.Y. 1995)).  A general objection is insufficient because it will not alert the court to the defendant's position.

---

[7] This court is not considering this method of preserving the issue because in petitioner's case,  trial counsel did move to dismiss at the end of the prosecution's case based upon the sufficiency of the evidence.  The only ruling made by the trial judge regarding this issue was in response to that motion.

23

*Id.* (citing *People v. Gray*, 86 N.Y.2d at 20).

Among the cased cited by the Second Circuit in *Garvey* was *People v. Parsons*, 30 A.D.2d 1071, 1072, 816 N.Y.S.2d 271, 271 (4ᵗʰ Dept. 2006).  In *Parsons*, the Appellate Division specifically held that the defendant had failed to preserve his insufficiency-of-evidence claim because the motion to dismiss was not specifically directed at the alleged insufficiency.  *Id.*  The *Garvey* court stated that New York courts consistently interpret N.Y. CRIM. PROC. LAW § 470.05(2) as requiring that a defendant specify the grounds of the alleged error in sufficient detail so that the trial court may have the opportunity to correct any error.  *Garvey*, 485 F.3d at 715 (citing *People v. McLane*, 256 A.D.2d 10, 10-11, 682 N.Y.S.2d 24, 25 (1ˢᵗ Dept. 1998)).

In this case, at the close of the prosecution's evidence, petitioner's trial counsel moved for a dismissal based upon the People's failure "to prove all of the counts in the indictment." (TT. at 433).  Counsel went on to specify only that the prosecution had failed to prove petitioner's intent to kill in connection with the attempted murder charge and the count alleging Criminal Possession of a Weapon in the Second Degree. (TT. at 433-434).

In its decision, the Appellate Division cited *People v. Gray, supra* in holding that Petitioner failed to preserve his insufficiency-of-evidence claim with respect to defaced firearm charge.  *People v. Smith*, 32 A.D.3d at 1319.  Based on *Garvey* and the New York cases cited by the Second Circuit in *Garvey*, it is clear that the Appellate Division in this case utilized a firmly established and regularly followed procedural basis for denying petitioner's insufficiency-of-evidence claim with respect

to this count.  *Garvey*, 485 F.3d at 714-715, 718.  Although Petitioner did move to dismiss, in general terms, based on insufficient evidence at the close of the prosecution's case, he did ***not*** specify the particular insufficiency that he later attempted to raise in the Appellate Division with respect to the defaced weapons charge, and therefore, the issue was "unpreserved."

As stated above, even a firmly established and regularly followed rule will not prevent habeas review if the application of that rule was "exorbitant."  *Garvey*, 485 F.3d at 713-714, 718.  In determining whether the application of an independent state rule was "exorbitant," the court should consider (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether petitioner had "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate governmental interest.  *Id*. at 714 (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).  These factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case.  *Id.* at 714.

A review of the relevant factors shows that, in this case, the Appellate Division's application of the procedural rule was not "exorbitant."  The first factor is satisfied because the procedural default was not raised at the trial.  Had petitioner in this case complied with N.Y. CRIM. PROC. LAW § 470.05(2), the trial court would have had the opportunity to consider the sufficiency of the evidence regarding his

knowledge that the firearm was defaced.  Second, as cited above, and in *Garvey*, New York case law has required the use of this rule in connection with a motion to dismiss at the close of the People's case.  *See e.g., People v. Parsons, supra; People v. Mann*, 63 A.D.3d 1372, 1373 880 N.Y.S.2d 792, 794 (3d Dept. 2009).  *See also Green v. Travis*, 414 F.3d 288, 294-295 (2d Cir. 2005) (citing *People v. Rodriguez*, 262 A.D.2d 428, 428, 693 N.Y.S.2d 54 (2d Dept. 1999)).

Finally, requiring a defendant to specifically cite the basis for his objection serves the legitimate governmental interest of allowing the trial court to have the first opportunity to correct any alleged legal error.  Based on the appropriate factors, the application of the state rule by the Appellate Division was not "exorbitant."  Thus, petitioner's cannot claim relief from his procedural default based upon the exception that the procedural rule was not firmly established and regularly followed.

### 2.    Cause and Prejudice

Because petitioner's claim is procedurally barred by an adequate and independent state ground, this court may consider it only if petitioner established cause for his default and actual prejudice, or showed that the failure to consider his claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime.  *Wainwright v. Sykes*, 433 U.S. at 90-91.

In his traverse, petitioner seems to argue that the alleged ineffectiveness of trial counsel in not making appropriate objections and arguments below constitutes cause for his failure to preserve issues such as the insufficiency of the proof on the defaced firearm charge.  (Dkt. No. 26 at 7-8).  "Although the petitioner may establish cause by

demonstrating the ineffectiveness of his counsel, he must first present the ineffective assistance contention to the state courts following the rules of those courts as an ineffective assistance claim is itself an independent constitutional claim." *Holland v. Irvin*, 45 Fed. Appx. 17, 19-20 (2d Cir. 2002) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451, (2000); *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir.1997)).  Where the facts underlying the defendant's ineffective assistance claim are on the record and defendant has different counsel on appeal, New York courts require the defendant to make his ineffective assistance claim on direct state appeal. *Id.* at 20.

In this case, trial counsel's failure to specifically reference the purported insufficiency of the evidence with respect to the defaced firearm charge was part of the trial record.  (TT. at 433-434, 438).  However, petitioner did not raise ineffectiveness of trial counsel in his direct appeal, but only in the subsequent *pro se* section 440.10 motion.  In ruling on the motion, the County Court Judge held that N.Y. CRIM. PROC. LAW § 440.10(2)(c) requires a court to deny a motion to vacate when the defendant failed to raise the issues on appeal despite having the opportunity to do so.  (Ex. K at 5, Dkt. No. 20-11).[8]  Accordingly, petitioner may not rely on the alleged

---

[8] Before invoking § 440.10(2)(c), the County Court Judge assessed the defendant's claims of ineffective assistance of trial counsel and found them to be without merit.  (Ex. K at 3-5, Dkt. No. 20-11).  However, "if a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative." *Thagard v. Connell*, 07-CV-6254, 2010 WL 986490, at *2 (W.D.N.Y. Mar. 17, 2010) (*citing Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision)).  In any event, even if there were no procedural bar to petitioner's claim that the evidence on the defaced firearm count was insufficient, the claim is without merit for the reasons discussed below.

ineffectiveness of trial counsel as cause for the failure to preserve this issue for appeal. *Holland v. Irvin*, 45 Fed. Appx. at 19-20.  In any event, the evidence on this weapons charge was clearly sufficient, and the petitioner cannot, therefore, establish prejudice or actual innocence.

### 3.   The Merits of the Claim

Under New York law, to establish that a person is guilty of Criminal Possession of a Weapon in the Third Degree, the People must establish that a person knowingly possessed a firearm "which has been defaced for the purpose of concealment of the detection of a crime or misrepresenting the identify of said . . . firearm."  N.Y. PENAL LAW § 265.02(3).  Contrary to petitioner's contention, there was sufficient evidence to establish that petitioner knew that the firearm was defaced.  Officer Kelly's testimony established that petitioner possessed a gun on his person.  (TT. at 330, 333, 336).  Furthermore, Officers Voce and Scully's testimony established that the gun's serial number was "shaved or drilled out."  (TT. at 228, 304, 405).  There were photographs of the weapon admitted into evidence that were available to the jury to determine whether it was possible for petitioner to possess the gun without knowledge that its identifying features were illegible.  As the Appellate Division found, "[g]enerally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his [or her] hands."  *People v. Smith*, 32 A.D.3d at 1320 (citing *People v Reisman*, 29 NY2d 278, 285 (1971)).[9]  This

---

[9] Appellate counsel raised the issue of the sufficiency of the evidence on this count.  After the Appellate Division ruled the issue was not preserved for appellate review, it stated that, "in any event, that contention lacks merit."  *People v. Smith*, 32 A.D.3d at 1320.

evidence was more than sufficient to establish petitioner's guilt of third-degree criminal possession of a weapon.

### C.     The Jury Instruction Under N.Y. PENAL LAW § 265.15(4)

Petitioner claims, as he did on direct appeal, that the trial court's instruction regarding the permissive presumption created by N.Y. PENAL LAW § 265.15(4) was confusing and failed to advise the jury that they could reject the presumption even though the defense presented no evidence.  Appellate Counsel argued that the court's charge improperly shifted the burden of persuasion to the petitioner and thus violated the Fourteenth Amendment's due process requirement that the state prove every element of a criminal offense beyond a reasonable doubt.  *See Sandstrom v. Montana*, 442 U.S. 510, 524 (1979).  This claim is procedurally barred and is, in any event, without merit.

### 1.     The Jury Charge

At the outset of his charge, the trial court instructed the jury that the People had the burden or proving every element of the crime beyond a reasonable doubt, that petitioner was not required to prove or disprove anything, and that "[t]he burden never shift[ed] from the People to the defendant."  (TT. at 469).  The court further instructed the jury that if the People failed to satisfy their burden of proof, it must find petitioner not guilty.  (TT. at 469-70).  With regard to the second-degree criminal possession of a weapon count, the court charged the jury that in order to find petitioner guilty of that charge, the People were required to prove beyond a reasonable doubt that:  (1) petitioner possessed a loaded firearm; (2) he did so knowingly; (3) the firearm was

operable; and (4) he possessed the loaded firearm with intent to use it unlawfully against another.  (TT. at 484-485).

With regard to that count, the court charged the jury that the People were relying on the presumption set forth in N.Y. PENAL LAW § 265.15(4) to prove that petitioner intended to use the gun unlawfully against another person. As the judge explained:

> That law provides that when the possessor of a firearm is not licensed to carry the pistol in question, possession of a loaded firearm is presumptive evidence of possessing the weapon with intent to use it unlawfully against another.

> That law simply means that in appropriate circumstances, you may, if you wish, infer from the fact that the defendant possessed such a weapon, that the defendant intended to use the same unlawfully against another.

> I instruct you, however, that this is a permissive inference which you may accept or reject. Because the law creates only a permissive inference, the law permits you, if you wish, to reject any inference that the defendant possessed a weapon with the intent to use the same unlawfully against another.  You may reject such inference on the basis of contrary evidence in this case or you may reject such inference even in the absence of any contrary evidence at all.

> I instruct you that because such law permits you, but does not require you, to infer intent to use unlawfully from possession of such weapon by the defendant, that law does not in any way shift the burden of proof to the defendant.  Let me say that again. I instruct you that because such law permits you, but does not require you, to infer intent to use unlawfully from possession of such weapon by the defendant, the law does not in any way shift to the defendant the burden to prove that he did not possess such weapon with the intent to use the same unlawfully against another.  The burden to prove that essential element always remains with the People.  I also want to emphasize that that inference, should you choose to follow it, only applies to that one weapons charge and does not apply to any of the other charges contained in the indictment.

(TT. at 485-487).

### 2.      Procedural Bar

Petitioner's claim regarding this jury charge is procedurally barred because the Appellate Division found that petitioner "failed to preserve" this claim for appellate review. *People v. Smith*, 32 A.D.3d at 1319.  Here, petitioner failed to object to the court's final charge.[10]  As discussed above, under New York's firmly established and regularly followed contemporaneous objection rule, a criminal defendant must preserve a challenge by making a specific and timely objection.  N.Y. CRIM. PROC. LAW § 470.05(2).  The procedural bar relied upon by the Appellate Division with respect to this jury charge in this case is "adequate," and not "exorbitant" under the three factors applied in *Cotto v. Herbert*, 331 F.3d at 240.  *See, e.g., Ledesma v. Cunningham*, 2004 WL 1775677, at *21-22 (collecting New York cases).

The petitioner has not shown cause for his default and actual prejudice; or that the failure to consider his claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime.  For the reasons discussed

---

[10] During the preliminary charge conference, defense counsel requested that, with respect to the presumption under N.Y. PENAL LAW § 265.15(4), the court inform the jury that it "could accept or reject that presumption regardless of whether any defense evidence was presented." (TT. at 389).  Prior to delivering the jury charge, the trial judge advised the lawyers that he had "listened to your requests, and I think all of them have been included in the final charge."  (TT. at 436-437).  After the charge, defense counsel stated that he no requests or exceptions to the charge as given.  (TT. at 497).  Under these circumstances, counsel did not preserve an objection to the charge as given.  *See, e.g., Ledesma v. Cunningham*, 03 Civ. 6322, 2004 WL 1775677, at *20 (S.D.N.Y. Aug. 10, 2004) (New York law requires that "[w]hen a Judge grants a request to charge and then fails to deliver the charge as requested, the requesting party has an obligation to draw the error to the Judge's attention.") (quoting *People v. Whalen*, 59 N.Y.2d 273, 280, 464 N.Y.S.2d 454 (N.Y. 1983)).

above, petitioner can not establish cause for his procedural default by making claims of ineffective assistance of trial counsel that should have been raised on direct appeal, but were not.  *See also Gonzalez v. Cunningham*, 670 F. Supp. 2d 254, 263-264 (S.D.N.Y. 2009) (where the Appellate Division considered and correctly denied the merits of a challenge to a jury charge even though trial counsel did not preserve an objection below, trial counsel was not deficient for failing to preserve the objection, and his alleged ineffectiveness did not provide cause for the procedural default). Petitioner cannot establish prejudice by showing a "reasonable probability" that the outcome of the trial would have been different but for the alleged constitutional violation, because his claim that the jury charge was unconstitutional is without merit.[11]

### D.    Challenge to Petitioner's Sentence

Petitioner contends that his sentence of 23 years to life for Attempted Murder in the First Degree was excessive and harsh.  The crime of Attempted Murder in the First Degree is a Class A-I felony.  N.Y. PENAL LAW  § 110.05.  Petitioner was required to

---

[11] The Appellate Division noted that a charge that **requires** a jury to presume that weapon possession is evidence that one intends to use the weapon unlawfully against another is unconstitutional.  However, the state appeals court made an alternative finding that the jury charge here "was proper" and "sufficiently conveyed to the jury that 'it had a choice as to whether to apply the statutory presumption.'"  *People v. Smith*, 32 A.D.3d at 1319-1320 (distinguishing *Sandstrom v. Montana*, 442 U.S. at 524).  The Appellate Division's conclusion that the trial court's instruction did not suggest a mandatory presumption or otherwise violate the Due Process Clause of the Fourteenth Amendment was not contrary to, or an unreasonable application of clearly applicable federal constitutional law.  *See, e.g., Santana v. Filion*, 55 F. Supp. 2d 136, 140-141 (E.D.N.Y. 1999) (upholding jury charge on permissive presumption under N.Y. Penal Law § 265.15(4)) (citing Ulster County Court v. Allen, 442 U.S. 140, 157, 160-162 & n.20 (1979)).

receive an indeterminate sentence, with a minimum term ranging from 15 to 25 years and a maximum term of life imprisonment.  N.Y. PENAL LAW §§ 70.00(2)(a), 70.00(3)(a)(i).  Petitioner's sentence fell within the applicable statutory range and, in response to an Eighth Amendment claim on appeal, the Appellate Division found that the sentence was not unduly harsh or severe.  *People v. Smith*, 32 A.D.3d at 1320.

The Second Circuit has consistently held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  *See also Bellavia v. Fogg,* 613 F.2d 369, 373-74, n.7 (2d Cir. 1979) (sentencing is properly the province of the state legislature, and long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment)*; Ewing v. California*, 538 U.S. 11, 25 (2003).  The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction.  *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003).

"The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  *Id*. at 77.  Outside of the context of capital punishment, successful challenges to the proportionality of particular sentences under the Eighth Amendment have been "exceedingly rare."  *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).  The Supreme Court in *Lockyer* held that a state appeals court's determination that a habeas petitioner's sentence of two consecutive prison terms of 25 years to life for petty theft under California's "Three Strikes" law was not disproportionate, did not constitute cruel and unusual punishment, and was not an unreasonable application of

33

clearly established Supreme Court law.  *Lockyer*, 538 U.S. at 77.  Under these standards, the Appellate Division's decision that the petitioner's sentence of 23 years to life for attempted murder of a police officer was not unduly harsh or severe can hardly be considered contrary to, or an unreasonable application of clearly applicable federal constitutional law.

### E.   Claims of Ineffective Assistance of Counsel

As noted above, petitioner did not raise claims of ineffective assistance of trial counsel in his direct state appeal, but did assert that claim in his motion to vacate his conviction under N.Y. CRIM. PROC. LAW § 440.10.  Although petitioner did not claim ineffective assistance of trial counsel in his original habeas petition, he was granted leave to amend to assert claims that his trial counsel was ineffective in that he:  (1) did not impeach a police officer with a prior inconsistent statement; (2) did not employ an investigator to locate a witness, who would have testified on petitioner's behalf; (3) did not to object to the exclusion of African-American and Hispanics from the jury pool; (4) did not object when the court made certain comments in voir dire; and (5) did not object when the prosecutor portrayed Officer Kelly as a truthful and heroic witness.  (Dkt. No. 10 at 2-3.)  In his traverse (Dkt. No. 26), petitioner made several other allegations of ineffective assistance of trial counsel that were not raised in his amended petition, but some of which were asserted in his section 440.10 motion.  In his traverse and supplemental traverse (Dkt. No. 32), petitioner also made allegations that his appellate counsel was ineffective for failing to assert the alleged ineffectiveness of trial counsel on appeal.

34

### 1.    Belated Allegations of Ineffective Assistance of Counsel

This court will not address the allegations of ineffective assistance of counsel that petitioner failed to raise in his motion to amend his petition (Dkt. No. 10), but referenced in his traverse and supplemental traverse.  Magistrate Judge Di Bianco provided petitioner with a stay and an opportunity to amend his habeas petition with claims of ineffectiveness of trial counsel in February 2009.  (Dkt. No. 11).  On July 28, 2009, the respondent answered petitioner's original habeas claims, as well as the amended claims allowed by Magistrate Judge Di Bianco.  (Dkt. Nos. 18-20).  By letter dated August 10, 2009, petitioner requested a further stay to exhaust, in state court, additional claims of ineffective assistance of counsel, in an effort to establish "cause" for the procedural defaults identified in respondent's papers.  (Dkt. No. 21).  On August 18, 2009, Magistrate Judge Di Bianco denied the request for an additional stay, finding that petitioner had failed to establish good cause under *Rhines v. Weber*, 544 U.S. 269, 277 (U.S. 2005).  (Dkt. No. 22).

On February 22, 2010, petitioner filed his traverse, suggesting additional claims of ineffective assistance, without requesting leave to further amend his petition.  (Dkt. No. 26).  Some of the additional grounds of ineffective assistance of trial counsel referenced in petitioner's traverse were previously raised in his section 440.10 motion, and petitioner stated no cause for failing to raise them in his original motion to amend his petition.  Some of the belated claims of ineffective assistance were clearly raised in

a further attempt to establish "cause" for prior procedural defaults.[12]  Moreover, the

one-year statute of limitations established by the AEDPA to assert habeas claims, 28

U.S.C. § 2244(d)(1), expired in March 2009.[13]

By letter dated March 4, 2010 (Dkt. No. 29), petitioner again requested a further

stay or leave to withdraw his petition so he could return to state court to "exhaust his

issues properly."  This court denied the stay, by order dated April 9, 2010, finding

petitioner's conclusory request was not adequate to justify a further stay.  (Dkt. No.

31).  *See also Hernandez v. Senkowski*, 93 CV 5763, 1995 WL 604703, at *4

(E.D.N.Y. Oct. 5, 1995) (petitioner's belated, tactical efforts to overcome procedural

defaults does not outweigh the prejudice to respondents if the court were to consider

dismissing the petition at a late stage of the proceedings) (collecting cases).  For the

---

[12] For example, petitioner's traverse complains that trial counsel was ineffective for
failing preserve objections to certain rulings by the trial court.  (Dkt. No. 26 at 7-8).  This claim
was raised in petitioner's prior section 440.10 motion.  (Dkt. No. 20-9 at 13-14).  His
supplemental traverse faults his appellate counsel for failing to raise, on direct appeal, claims of
ineffective assistance of trial counsel.  (Dkt. No. 32).

[13] Petitioner's judgment of conviction became final 90 days after December 21, 2006,
when the Court of Appeals denied him leave to appeal.  *See Williams v. Artuz*, 237 F.3d 147,
150-151 (2d Cir. 2001).  As Magistrate Judge Di Bianco previously calculated, without regard to
tolling, petitioner was required, under 28 U.S.C. § 2244(d)(1), to file his petition by March 21,
2008–365 days after March 21, 2007 (which is 90 days after December 21, 2006).  (Dkt. No. 6 at
5).  As respondent notes, the one-year statutory period was tolled from the date petitioner filed
his section 440.10 motion–February 20, 2008–to the date the Appellate Division denied him
leave to appeal the adverse decision on his motion–December 18, 2008.  (Resp. Memo. of Law at
19, Dkt. No. 19).  By letter dated June 5, 2008 (Dkt. No. 7), petitioner requested a stay of this
action, which Magistrate Judge Di Bianco granted on June 23, 2008 (Dkt. No. 8) and lifted by
order dated February 23, 2009 (Dkt. No. 11).  The stay granted by Judge Di Bianco operated to
extend the period that was already stayed by virtue of the pendency of the section 440.10 motion
from December 19, 2008 to February 23, 2009.   While the original habeas petition and
petitioner's approved amendments were timely, any additional habeas claims must have by filed
no later than in March 25, 2009.

reasons stated in the prior order and those stated above, this court finds that petitioner's additional allegations of ineffective assistance of trial and appellate counsel are not properly part of his habeas petition and will not be addressed.

### 2.      Procedural Bar

### a.      Claims Based on the Trial Record

Petitioner raised all but one of the grounds of ineffective assistance of his trial counsel alleged in his petition in his motion to vacate under N.Y. CRIM. PROC. LAW § 440.10.[14]  In denying the section 440.10 motion, the County Court Judge relied upon N.Y. CRIM. PROC. LAW § 440.10(2)(c) which requires dismissal "when the defendant failed to raise such ground or issue on appeal perfected despite having the opportunity to do so."  (Ex. K at 5, Dkt. No. 20-11).  That ruling would create a procedural bar to habeas claims of ineffective assistance of trial counsel, to the extent the issues were covered in the record of the trial proceedings.

Under New York law, "it is well-settled . . . that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on direct appeal precludes subsequent collateral review of that claim." *Louis v. Fischer*, 04 Civ. 2887, 2007 WL 4198255, at *21 (S.D.N.Y. June 25, 2007) (citing *Serrano v. Senkowski*, 02 Civ. 8708,  2004 U.S. Dist. LEXIS 18936 at *35-36 (S.D.N.Y. Sept. 23, 2004) (citing New York state cases)); *Brown v. Perlman*, 07 Civ. 8672, 2008 WL 2009220, at *28 n.56 (S.D.N.Y. May 8, 2008) (collecting cases).  This rule applies to bar collateral

---

[14] The claim that trial counsel was ineffective for not objecting to the prosecutions efforts to bolster Officer Kelly as a heroic police officer was not raised in the section 440.10 motion.

review where the facts underlying an ineffective assistance of counsel claim appear on the record. *Id.* Accordingly, where an ineffective assistance of counsel claim is record-based, federal habeas courts have found N.Y. CRIM. PROC. LAW § 440.10(2)(c) to be "firmly established and regularly followed," and thus "adequate." *See, e.g., Sweet v. Benne*tt, 353 F.3d 135, 139-40 (2d Cir. 2003); *Alston v. Donnelly*, 461 F. Supp. 2d 112, 123-24 (W.D.N.Y. 2006); *Powers v. Lord*, 462 F. Supp. 2d 371, 378 (W.D.N.Y. 2006).[15] By contrast, where the ineffective assistance of counsel claim is not record-based, federal habeas courts have held that the rule of § 440.10(2)(c) is not adequate. *Louis v. Fischer*, 2007 WL 4198255, at *21; *Murden v. Artuz*, 497 F.3d at 196. *See also Holland v. Irvin*, 45 Fed. Appx. at 20 ("where, as here, the facts underlying the defendant's ineffective assistance claim are on the record and defendant has different counsel on appeal, New York courts require the defendant to make his ineffective assistance claim on appeal) (citations omitted).

With the possible exception of the conclusory allegation that defense counsel failed to employ an investigator to locate additional eyewitnesses who purportedly could controvert the testimony of police witnesses about the incident of July 22, 2003,[16] petitioner's claims of ineffective assistance of trial counsel would be based on

---

[15] The application of § 440.10(2)(c) in the context of this case also satisfies the three *Cotto* factors and, is therefore, not "exorbitant." *See, e.g., Estwick v. Walker*, 01 Civ. 2174, 2004 WL 1151581, at *5-7 (S.D.N.Y. May 24, 2004); *Murden v. Artuz*, 497 F.3d at 192 (discussing procedural bar under N.Y. CRIM. PROC. LAW § 440.10(3)(c) based on failure to raise a claim in a prior motion to vacate).

[16] Petitioner has never articulated what additional eyewitnesses might have said about the incident, so it is not clear there are facts beyond the trial record that would be relevant to even this claim. As discussed below, the testimony of the police officers referenced other bystanders

the trial record and could have been raised on direct appeal. The claim that counsel

failed to exploit the inconsistencies in the testimony of different witnesses or

effectively impeach police witnesses with prior statements would certainly be based

entirely on the trial record.  Similarly, defense counsel's failure to object to the

remarks of the trial judge about the nature of jury deliberations during the voir dire

was reflected in the record.  (TT. at 61-64).  Although petitioner's claim that his trial

lawyer did not object to racially selective jury selection was vague, the judge denying

his section 440.10 motion found that the claim was based on selective portions of the

voir dire, taken out of context.  (Ex. K at 4, Dkt. No. 20-11).[17]

The record-based claims would be procedurally barred unless petitioner can

demonstrate cause and prejudice for failing to raise these claims at the appropriate

time in state court, or can establish his "actual innocence."  The habeas petition and

amendment offer no justification for petitioner's failure to raise the claims of

ineffective assistance of trial counsel on direct appeal.[18]

---

in the area, some of whom were interviewed.  Three civilian eyewitnesses testified at trial.

[17] The section 440.10 motion included an allegation that trial counsel advised petitioner, during a jail visit, "that I would be lucky if I found any African Americans on the jury panel." (Ex. I, Dkt. No. 20-9 at 11).  This alleged statement would not be part of the trial record. However, as discussed below, to the extent petitioner intended to raise a "fair cross section" challenge to the jury venire, conclusory observations about the racial composition of a particular panel is not sufficient to support a colorable claim of  "systematic exclusion," or a claim that trial counsel was ineffective for failing to raise this constitutional argument below.

[18] Petitioner alleged that his appellate counsel was ineffective for failing to assert that trial counsel–a different lawyer–was ineffective.  However, petitioner has failed properly to exhaust, in state court, his claim that appellate counsel was ineffective.  In New York, a common law writ of error *coram nobis*, filed in the appellate court, is the proper vehicle for bringing a claim of ineffective assistance of appellate counsel.  *People v. Bachert*, 69 N.Y.2d 593, 598, 516 N.Y.S.2d 623, 626 (N.Y. 1987); *Turner v. Miller*, 124 Fed. Appx. 682, 683-684, 2005 WL 481694 (2d Cir. 2005).  Although

The evidence against petitioner on the attempted murder charge was strong. The victim police officer testified that petitioner pointed a firearm at his chest, stomach, and head, and that the officer kept it from firing only by pushing back and holding the slide on the gun.  Three civilian eyewitnesses corroborated significant portions of Officer Kelly's testimony, including the fact that the petitioner attempted to pull the officer's service weapon from its holster during their struggle.  The forensic and other evidence regarding the firearm possessed by petitioner showed that it was fully loaded and in the "ready fire" position when recovered at the scene.  In light of the People's compelling case, petitioner certainly has no plausible claim that he was prejudiced by the alleged deficiencies in trial counsel's performance, much less any basis to assert "actual innocence."  *See, e.g., Wise v. Smith*, 735 F.2d 735, 739 (2d Cir.1984) ("overwhelming" eyewitness testimony and physical evidence indicating that the defendant committed the crime overcame any possible prejudice); *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.").  A claim of actual innocence requires petitioner to put forth new

---

petitioner mentioned the issue of ineffective assistance of appellate counsel in his motion to vacate under N.Y. Crim. Proc. Law § 440.10, he did not raise the issue in the appropriate common law writ, and thus failed properly to exhaust his state remedies for this claim.  *See, e.g., Dumas v. Kelly*, 105 F. Supp. 2d 66, 74 (E.D.N.Y. 2000); *Bentley v. Scully*, 91 CIV. 1868, 1991 WL 183357, at *5 (S.D.N.Y. Sept. 11, 1991).  Accordingly, any claim regarding his appellate counsel could not provide cause for his failure to raise any issue on appeal. *Taylor v. Poole*, No. 07 Civ. 6318, 2009 WL 2634724, at *16-17 (S.D.N.Y. August 27, 2009) (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)) (because petitioner failed properly to present his ineffective assistance of appellate counsel "as an independent claim" in the state courts, it cannot serve as cause for his procedural default in failing to raise the issue of ineffective trial counsel on direct appeal); *Holland v. Irvin*, 45 Fed. Appx. at 19-20.

reliable evidence that was not presented at trial, which petitioner has not done in this case. *Cabezudo v. Fischer*, 2009 WL 4723743, at *13; *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d at 114; *Schlup v. Delo*, 513 U.S. at 316, 327.

Had petitioner been represented by the same attorney at trial and on appeal, the application of § 440.10(2)(c) to bar his claim of ineffective assistance of trial counsel might not be "adequate." *See, e.g., Moseley v. Scully*, 908 F. Supp. 1120, 1128 (E.D.N.Y.1995), *aff'd*, 104 F.3d 356 (2d Cir.1996) (failure to raise an ineffective assistance claim on direct appeal would not bar a later section 440.10 motion when defendant was represented by the same counsel at trial and on direct appeal) (citing *People v. Harris*, 109 A.D.2d 351, 491 N.Y.S.2d 678 (2d Dept. 1985)); *Russillo v. Mellas*, 03-CV-792S, 2007 WL 748437, at *7 (W.D.N.Y. March 07, 2007) (§ 440.10(2)(c) has not been consistently applied where the petitioner retained the same trial and appellate counsel, and hence is not an adequate basis for a procedural bar).

In this case, trial and appellate counsel were both lawyers from the same public defenders' office; but petitioner has not claimed that appellate counsel's alleged ineffectiveness resulted from any conflict of interest arising from her professional affiliation from trial counsel. The fact that petitioner's trial and appellate counsel were both lawyers from the same public defenders' office does not, at least on the facts of this case, undermine the adequacy of § 440.10(2)(c) as a procedural bar. *See., e.g.*, *Torres v. Strack*, 96-CV-846, 1998 WL 59452, at *2, *5 (N.D.N.Y. Feb. 10, 1998) (although petitioner claimed that a conflict of interest on the part of appellate counsel caused her not to raise ineffective assistance of trial counsel, who was

41

employed by the same public defenders' office, state court held that section 440.10 motion asserting ineffective assistance of trial counsel was procedurally barred by § 440.10(2)(c));[19] *Garfield v. Poole*, 421 F. Supp. 2d 608, 613-614 (W.D.N.Y. 2006) (mere claim that appellate counsel failed to raise ineffective assistance of trial counsel because they were employed by the same public defenders' office was insufficient to suggest even an appearance of a conflict of interest). Even if these claims that trial counsel was ineffective were not procedurally barred, they would be subject to denial on the merits, for the reasons set forth below.

---

[19] The habeas judge in *Torres v. Strack* went on to apply *Strickland* standards to determine that appellate counsel was not ineffective in choosing which issues to assert on appeal. *Id.* at *5-7. In the appellate context, counsel does not provide ineffective assistance by failing to advance every non-frivolous argument that could be made. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citations omitted). There is no merit to petitioner's conclusory allegation, in his traverse, that appellate counsel was ineffective in deciding which issues to raise on appeal. *See, e.g., Reid v. Giambruno*, 03-CV-250, 2007 WL 3232497, at *9 (W.D.N.Y. Oct. 31, 2007) ("Strategic choices," such as deciding which issues to raise on appeal, "made after thorough investigation of the law and facts . . . are virtually unchallengeable.") (*quoting Strickland*, 466 U.S. at 690-91); *Cabezudo v. Fischer*, 2009 WL 4723743, at *12 & n.5 (denying conclusory claim of ineffective assistance of appellate counsel where petitioner did not present any evidence indicating that counsel omitted significant and obvious issues, while pursuing clearly and significantly weaker arguments). As discussed below, petitioner's claims of ineffective assistance of trial counsel were without merit, and certainly were not clearly and significantly stronger than the issues appellate counsel raised on appeal. *See Rolle v. West*, 04-CV-4182, 2007 WL 2343674, at *8 (E.D.N.Y. Aug. 13, 2007) (where there is no merit to claims of ineffectiveness of trial counsel, claims that appellate counsel was ineffective for failing to raise the claims regarding trial counsel are likewise without merit). Hence, there is no basis to petitioner's claim that his appellate counsel was ineffective or that her alleged ineffectiveness provided "cause" for his failure to raise ineffective assistance of trial counsel on appeal. *See Rivera v. Miller*, 05 Civ. 4048, 2006 WL 3230293, at *5 (S.D.N.Y. Nov. 7, 2006) (whether appellate attorney's employment at the same agency as the trial attorney created a conflict of interest is irrelevant where habeas petitioner did not show any adverse effect on his appellate counsel's performance).

### b.   Other Claim of Ineffective Assistance

In the amendment to the petition, Lauren Smith claims that defense counsel was ineffective because he allowed the prosecutor to bolster Officer Kelly as a truthful and heroic witness.  (Dkt. No. 10 at 2).  This claim is unexhausted because petitioner did not present it in state court, either on direct appeal or in his section 440.10 motion. *See, e.g., Caballero v. Keane*, 42 F.3d 738, 740-741 (2d Cir. 1994) (aspect of ineffective assistance claim regarding trial counsel that was never presented in a New York court was unexhausted); *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (finding that petitioner failed to exhaust claims of ineffective assistance of trial counsel on various grounds never raised before a state court).

Additionally, the claim should be deemed procedurally barred because petitioner no longer has a state-court forum in which he can raise this claim. If petitioner attempted now to exhaust these claims by filing another motion to vacate under N.Y. CRIM. PROC. LAW § 440.10, his motion would likely be subject to mandatory dismissal under § 440.10(2)(c) for unjustified failure to raise the particular instances of alleged ineffective assistance on direct appeal.[20]  "'[A] federal habeas

---

[20] A second § 440.10 motion would also be subject to discretionary denial under § 440.10(3)(c) because petitioner failed to raise the claim of ineffective assistance of trial counsel in his first motion to vacate in state court.  Because the denial of a second motion under §440.10 (3)(c) is not mandatory, this would not require a finding of procedural default. *See, e.g.*, *Affser v. Murray*, 04 CV 2715, 2008 WL 2909367, at *4 (E.D.N.Y. July 28, 2008) (because a state court could, in its discretion, review claims on the merits under § 440.10(3)(c), despite petitioner's failure to raise them in his previous motions to vacate, these claims are not necessarily defaulted); *Perez v. Perrott*, 9:04-CV-327, 2008 WL 2323360, at *7 (N.D.N.Y. June 2, 2008) (same ruling with respect to discretionary grounds for denial of motion to vacate under § 440.10(3)(b)) (distinguishing *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007).

court need not require that a federal claim be presented to the state court if it is clear that the state court would hold the claim procedurally barred.'"  *Grey v. Hoke*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)).  As discussed above, a procedural bar under § 440.10(2)(c) would be "adequate" and not "exorbitant" in this context.  As further established above, petitioner has failed to demonstrate cause for failing to raise this claim in state court or resulting prejudice; nor has he shown that a miscarriage of justice will occur if his claim is not reviewed. Hence, petitioner is not entitled to habeas corpus review of this claim, although it would also be properly denied on the merits under the standards set forth in 28 U.S.C. § 2254(b)(2).

### 3.   The Merits of the Claims

#### a.   The State Court Ruling

In denying the claims of ineffective assistance of trial counsel in petitioner's section 440.10 motion, the County Court judge applied the standards of New York law: "'so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirements will have been met.'"  (Ex. K at 2, Dkt. No. 20-11 *(quoting People v. Baldi*, 54 N.Y.2d 137, 146-147, 444 N.Y.S.2d 893 (N.Y. 1981)).  In finding that the petitioner had not been deprived of meaningful representation, the state court observed that, before trial, counsel filed motions to suppress the evidence seized from petitioner's person, to dismiss the indictment based on insufficiency of the grand jury evidence, and to disclose

exculpatory evidence.  Furthermore, the trial court noted that counsel requested, and participated in *Sandoval* and *Ventimiglia* hearings.[21]  The court further recognized that at trial, counsel participated in jury selection by asking logical questions of prospective jurors and exercising peremptory challenges, made cogent opening and closing statements,[22] thoroughly cross-examined the prosecution witnesses who offered relevant testimony,[23] and made a motion to dismiss the charges dismissed at the end of the People's case.[24]  In addition, the court noted that following petitioner's

---

[21] In a *Sandoval* hearing, the court determines the admissibility of prior crimes for impeachment purposes, should the defendant take the stand.  *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (N.Y. 1974).  In a *Ventimiglia* hearing, the court assesses the probative force and prejudicial effect of any evidence of uncharged crimes or prior bad acts to be offered at trial.  *People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261 (N.Y. 1981).

[22] During his opening (TT. at 203-206) and summation (TT. at 441-449), defense counsel cogently focused on the issue of whether petitioner intended to kill Officer Kelly, the critical element of the most serious, attempted murder charge.  He properly suggested that, in evaluating petitioner's intent, the jury consider that petitioner ran away from the officer, that no shots were ever fired, that petitioner may have ejected the magazine from his gun, and that the officer was not seriously hurt.  (TT. at 205, 441-443).

[23] Through the cross-examination of Joseph Yaletchko, counsel elicited that Yaletchko never saw petitioner point a gun at Officer Kelly.  (TT. at 266).  During cross-examination, counsel induced Officer Kelly to acknowledge that he never depressed the button which would have released the magazine to petitioner's gun.  (TT. at 366-367).  Through Officer Scully's cross-examination, counsel elicited that, after petitioner's arrest, petitioner told Scully that petitioner dropped the gun's magazine and was going to give it to the officer.  (TT. at 233-234).  And, through Officer Cozza, counsel confirmed that Cozza recovered the magazine and gun separately from the ground.  (TT. at 294).  Finally, during the cross-examination of Ellen Pugh, April Davis, and Officer Kelly, counsel established that petitioner was trying to flee from Officer Kelly.  (TT. at 246, 364, 422).  In addition to cross-examining witnesses, counsel made objections during the government's examination of witnesses that were sustained.  (TT. at 380-381, 384-385, 413-414).

[24] As noted above, trial counsel's motion to dismiss focused on the government's proof of petitioner's intent to kill on the attempted murder charge and the most serious weapons charge.  (TT. at 433-434).  This was a reasonable tactical decision, although it resulted in an Appellate Division finding that the issue of the sufficiency of the evidence on the firearms defacement

conviction, counsel filed a sentencing memorandum to encourage a lenient sentence despite the seriousness of petitioner's crimes.  (*Id*. at 3).

In addition to focusing on the overall performance of trial counsel, the County Court addressed specific issues raised by petitioner with respect to counsel's representation.  The court noted, for example, that, in claiming that defense counsel failed to employ an investigator, petitioner did not "detail[ ] any evidence or knowledge to support the allegation."  (*Id*. at 4).  The trial judge also concluded that petitioner's challenge to this counsel's handling of jury selection was based on individual sentences from voir dire, taken out of context.  (*Id*.)  Relying on "the trial record and this court's recollection of defense counsel's trial performance and pretrial strategy," the court denied the claims of ineffective assistance of counsel in petitioner's motion to vacate.  (*Id*. at 4-5).[25]

Some judges in the Second Circuit[26] have raised concerns about the differences between the New York standards for evaluating ineffective assistance of counsel and

---

charge was not preserved for appeal.  However, appellate counsel raised the latter issue, and the Appellate Division found, in the alternative, that the evidence was sufficient with respect to the petitioner's knowledge that the weapons was defaced.  Hence, trial counsel was not ineffective for failing to preserve the objection below.  *See Bierenbaum v. Graham*, 08-1375-pr, _ F.3d _, 2010 WL 2036951, at * 19 (2d Cir. May 25, 2010) (given that the Appellate Division reviewed the claim that the evidence was legally insufficient in a particular respect, he cannot claim that counsel was ineffective in failing to preserve the issue for appeal).

[25] As noted above, the court also denied the claims of ineffective assistance of counsel, to the extent they were based on the trial record, because of petitioner's procedural default under N.Y. CRIM. PROC. LAW § 440.10.  (*Id*. at 5).

[26] *See, e.g., Henry v. Poole*, 409 F.3d 48, 70-71 (2d Cir.2005); *Parker v. Ercole*, 582 F. Supp. 2d 273, 292 n.9 (N.D.N.Y. 2008).

the *Strickland* standard applied by the federal courts.[27]   However, several panels of the Second Circuit have held that, for the purposes of review of a habeas petition under 28 U.S.C. § 2254(d), New York's "meaningful representation" standard is not "contrary to" the *Strickland* standard.  *Rosario v. Ercole*, 601 F.3d at 124 (collecting cases).  As the panel in *Rosario* concluded:

> [There is a] danger that some courts might misunderstand the New York standard and look past a prejudicial error as long as counsel conducted himself in a way that bespoke of general competency throughout the trial. That would produce an absurd result inconsistent with New York constitutional jurisprudence and the mandates of *Strickland*. Properly applied, however, [the New York] standard is not contrary to *Strickland* . . . .

*Id.* at 125-126.

This court concludes that the County Court did not unreasonably apply the applicable *Strickland* standards in denying petitioner's claims of ineffective assistance of trial counsel.  Counsel faced a formidable challenge in defending this case, given the strength of the People's case, as outlined above.  The trial court correctly concluded that trial counsel's overall performance was constitutionally effective for the reasons he outlined.  As discussed below, this also court concludes that none of the

---

[27] The Second Circuit in *Rosario v. Ercole*, 601 F.3d 118, 124-126 (2d Cir. 2010) aptly described the differences between the two standards.  To show prejudice under the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors, as articulated by *Strickland*; a defendant need only demonstrate that he was deprived of a fair trial overall.  *Id. at 124.*  However, a single error by otherwise competent counsel may establish prejudice under the New York standard, if that error compromised the integrity of the trial as a whole.  *Id.* (citing *People v. Turner*, 5 N.Y.3d 476, 480, 806 N.Y.S.2d 154 (N.Y. 2005)).

particular aspects of trial counsel's performance, which the amendments to the petition claim to be ineffective, would support relief under 28 U.S.C. § 2254.

### b.    Alleged Failure to Impeach Police Witness

The amendments to the habeas petition allege that trial counsel was ineffective for failing to attempt to impeach a "police officer" (presumably Officer Kelly) with unspecified, allegedly inconsistent prior statements.  As noted above, this claim was asserted in petitioner's section 440.10 motion and should be procedurally barred under N.Y. CRIM. PROC. LAW § 440.10(2)(c) because the claim was apparently based on the trial record, and because petitioner failed to raise it on direct appeal.  The trial judge denying the section 440.10 motion found, in the alternative, that this claim was without merit.  This court finds that the state judge's decision, in the alternative on the merits, was not contrary to, or an unreasonable application of the applicable federal law established in *Strickland.*

Petitioner fails to identify any prior statement(s) of Officer Kelly that he believes that his trial lawyer should have used for impeachment, or to explain how those statements were inconsistent with the officer's testimony.[28]  Such vague and

_____

[28] In his traverse, petitioner attaches a supporting deposition of trial witness Joseph Yaletchko, and asserts it is inconsistent with Officer Kelly's trial testimony.  (Dkt. No. 26 at 3, 19-20).  In the pretrial deposition, Mr. Yaletchko states that, at one point during the struggle, the petitioner had the officer pinned down on the road on his stomach with the petitioner's knee on the officer's back (*Id.* at 19-20), while Officer Kelly testified that he was on top of the petitioner when they were wrestling on the ground.  (TT. at 335, 338).  If the statement of Mr. Yaletchko is what petitioner asserts his counsel failed to use to impeach Officer Kelly, this certainly does not undermine the finding of the state judge that trial counsel was not ineffective.  It is doubtful that counsel would have been permitted by the trial judge to attempt to impeach Officer Kelly, on cross-examination, with a prior statement of a different witness, and such cross-examination would not likely have been effective.  The fact that various eyewitnesses may have had different

conclusory allegations of ineffective assistance of counsel are insufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. *See, e.g. Warren v. Napoli*, 05 Civ. 8438, 2009 WL 2447757, at *15 (S.D.N.Y. Aug. 10, 2009) (conclusory claim that trial counsel failed to impeach police officer with a prior statement was without merit when the petitioner failed to identify the relevant information in the statement or how it could be used for impeachment). In any event, counsel's tactical decisions regarding how to attempt to impeach witnesses should generally not be subject to second-guessing under *Strickland*. *See, e.g., Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir.2002) ("[d]ecisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim.") (internal quotations omitted); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992) (finding that trial counsel was not ineffective despite petitioner's claim that counsel had failed to throughly impeach prosecution witnesses since decisions as to nature and extent of cross-examination are strategic).

### c.    Alleged Failure to Investigate and Find Other Witnesses

Petitioner alleged, in his section 440.10 motion, that his trial counsel was

---

perceptions or recollections of the relative positions of Officer Kelly and the petitioner during particular stages of their brief, but desperate physical struggle, was unlikely to significantly effect the jury's perception of whether petitioner intended to kill the officer. Defense counsel reasonably focused on other facts to establish that his client did not attempt to murder Officer Kelly–that he attempted to flee at several points, that petitioner's firearm was never discharged, and that the petitioner may have caused the magazine of his gun to be ejected during the incident.

ineffective for failing to hire an investigator to locate additional eyewitnesses to the incident of July 22, 2003 who could have contradicted the testimony of police witnesses. The County Court judge denied this claim on the merits, noting that petitioner failed to detail "any evidence or knowledge to support the allegation." (Ex. K at 4, Dkt. No. 20-11). This court finds that the trial court's ruling was not contrary to or an unreasonable application of the *Strickland* standards.[29]

Although the amended petition does not identify the eyewitnesses petitioner contends his lawyer should have been located, his section 440.10 motions identifies "Barbara Arroyo and siblin [sic], as well as friend" as missing potential witnesses. (Ex. I, Dkt. No. 20-9 at 21). The trial record does reflect that the mother of petitioner's child (not identified by name), Barbara Arroyo, and others were in the area before, during, or after the incident. (TT. at 292-293, 326-327, 346). After the incident, the police spoke with some of the bystanders who were not called as trial witnesses, and Barbara Arroyo was arrested for disorderly conduct. (TT. at 292-293). Although petitioner claims that his trial lawyer did not attempt to locate or interview eyewitnesses, he attaches, to his traverse, what appears to be a memorandum to "Pat" (presumably his lawyer, Assistant Public Defender Patrick Marthage) from "Nick" (presumably an investigator) reporting efforts to interview eyewitness and trial witness "Ellen Pueh" [sic, should be "Pugh"]. (Ex. D, Dkt. No. 26 at 21).

---

[29] Arguably this claim is not procedurally barred because the basis of the claim consisted of facts outside of the trial record, so the issue could not have been raised on direct appeal. However, as noted, petitioner raised little or no supporting evidence for this claim, either from within or outside of the trial record.

Decisions about which defense witnesses to call are inherently tactical decisions which courts are loathe to second-guess under *Strickland. See, e.g., United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997) (the decision of whether or not to call a particular witness is a matter of trial strategy which the courts will generally not second guess); *United States v. Best*, 219 F.3d 192, 201 (2d Cir.2000) (an attorney's decision whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation); *Sweat v. U.S.*, 05-CV-221, 95-CR-232, 2005 WL 3179672, at *7 (N.D.N.Y. Nov. 29, 2005) (habeas claims based on complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative). Although petitioner offers no concrete evidence regarding the process that led to the defense decision not to call any witnesses, the relationship between petitioner and the mother of his child and the fact that Barbara Arroyo was arrested at the scene for disorderly conduct, suggest viable tactical reasons for not calling those witnesses.

In any event, petitioner provides no specifics to support his conclusory claim that these potential witnesses could have provided helpful testimony that would have contradicted the police officers and other eyewitnesses called by the prosecution. Such conclusory allegations that trial counsel was ineffective for failing to investigate and call witnesses do not support a viable claim under *Strickland. See, e.g., Curry v. Burge*, 03 Civ.0901, 2004 WL 2601681, at *31 (S.D.N.Y. Nov. 17, 2004) (rejecting claim of ineffective assistance based on conclusory claims which provided no

51

indication as to what exculpatory evidence a proper investigation would have revealed, or how such evidence would have benefitted the defense case, particularly because there was no way to know that trial counsel simply rejected particular investigative steps as being unpromising) (collecting cases); *Rodriguez v. Senkowski*, 03Civ.3314, 2004 WL 503451, at *42 (S.D.N.Y. Mar. 15, 2004) (petitioner's bald assertion that counsel should have hired an investigator to find and interview additional eyewitnesses fails to overcome the presumption that counsel acted reasonably); *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir.1990) (petitioner's affidavit making allegations in a "conclusory fashion" failed to demonstrate that counsel's decision not to call a witness was unreasonable).

### d.   Alleged Failure to Object to Biased Jury Selection

The amendments to the habeas petition allege that trial counsel was ineffective for failing to object to the selective exclusion of African Americans and Hispanics from the jury pool.  This conclusory claim was asserted in petitioner's section 440.10 motion and should be procedurally barred under N.Y. CRIM. PROC. LAW § 440.10(2)(c) because the claim was apparently based on the trial record, and because petitioner failed to raise it on direct appeal.  As discussed above, the trial judge denying the section 440.10 motion found, in the alternative, that this claim was without merit.  This court finds that the state judge's decision, in the alternative on the merits, was not contrary to, or an unreasonable application of the applicable federal law established in *Strickland.*

It is unclear whether petitioner objects to the procedures in Oneida County for

selecting the jury venire or whether he is asserting that the prosecution improperly

excluded minority jurors under *Batson v. Kentucky*, 476 U.S. 79 (1986).  And, he

provides almost no concrete information, from the trial record or otherwise, to support

his claim of racial bias in the selection of his trial jury.  The only detail that petitioner

provides about his claim of racially biased jury selection is the allegation, in his

section 440.10 motion, that his trial counsel advised him that he would be "lucky" if

he found "any African Americans on the jury panel."  (Ex. I, Dkt. No. 20-9 at 10-11).[30]

However, even if the panel for petitioner's trial had few, if any minority jurors, that

alone would not have supported a *prima facie* claim of a violation of petitioner's

Equal Protection rights, or his Sixth Amendment right to jury representing a "fair

cross-section" of the community.[31]  *See, e.g., Perry v. Miller*, 96 CV 5887, 1998 WL

426721, at *4 (E.D.N.Y. June 12, 1998) (that a particular venire panel was devoid of

racial minorities is insufficient to establish "systematic exclusion" under the Sixth

---

[30] Two prospective jurors expressed some concerns about their ability not to be influenced by certain prior experiences with African Americans in judging the defendant.  (TT. at 45-48, 49-52, 95, 96).  However, both individuals were eliminated from the jury through the use of peremptory challenges (TT. at 112), so petitioner was not prejudiced by their possible racial biases.

[31] The Second Circuit has adopted a three-part test for determining whether a party has established a *prima facie* case of discrimination in the jury-selection process amounting to a denial of equal protection: (1) whether the group alleged to be excluded is "cognizable"; (2) whether the group is substantially under-represented in venires from which juries are selected; and (3) whether the under-representation is caused by a selection procedure that is not racially neutral. *See United States v. Biaggi*, 909 F.2d 662, 677 (2d Cir. 1990).  The test for establishing a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement is similar: (1) whether the group is "distinctive"; (2) whether the representation is not fair and reasonable in relation to the number of persons in the community; and (3) whether the under-representation is caused by systematic exclusion of that group in the jury-selection process. *See United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996).

Amendment or that a selection procedure is not "racially neutral" under the Equal Protection clause); *Minigan v. Donnelly*, 01-CV-0026A , 2007 WL 542137, at *19 (W.D.N.Y. Feb. 16, 2007) (the bare allegation that minorities were under-represented on petitioner's jury panel was plainly insufficient to show the jury selection process as a whole for criminal trials systematically excluded blacks, let alone that there was intentional discrimination on the part of the state officials responsible for administering the jury selection system).  Based on the scant evidence of discrimination in selection of jury venires petitioner provides, trial counsel was not constitutionally ineffective in failing to raise a timely challenge at trial to the panel. *See Minigan v. Donnelly*, 2007 WL 542137, at *19.  *See also Nichols v. Kelly*, 923 F. Supp. 420, 425-426 (W.D.N.Y. 1996) (conclusory claims that the pool did not constitute a "fair cross section" of the community are insufficient to establish a Sixth Amendment claim).

      To the extent petitioner is claiming that trial counsel was ineffective for not making objections under *Batson*, his conclusory allegations are wholly insufficient to support a habeas claim.[32]  He provides no information at all about the racial composition of the jury panel or how, it at all, peremptory challenges were used to

---

[32] *Batson* set forth a three-part test that trial courts are to employ in evaluating allegations of race-based exercise of peremptory challenges.  A trial court must first determine whether the party challenging the peremptory strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race.  *See Hernandez v. New York*, 500 U.S. 352, 358-358 (1991).  Once a *prima facie* case is established, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror.  *Batson*, 476 U.S. at 97; *Hernandez*, 500 U.S. at 358-59.  Finally, the court must evaluate whether the moving party has carried his burden of proving that the strike was motivated by purposeful discrimination.  *Batson*, 476 U.S. at 98.

exclude members of discrete racial groups. *See, e.g., Morales v. Greiner*, 273 F. Supp.

2d 236, 256 (E.D.N.Y. 2003).  The district court in *Morales* rejected a claim by a

habeas petitioner that his trial counsel was ineffective for not raising a *Batson*

objection at trial where it was clear that such a challenge had no merit under

circumstances similar to this case:

> [P]etitioner bears "the burden of articulating and developing the factual and
> legal grounds supporting his Batson challenge before the trial court." *Overton*
> [*v. Newton*], 295 F.3d [270,] 278-280 [(2d Cir. 2002)]. . . .  There is nothing in
> the record to show how many African-Americans were in the total venire, how
> many challenges the prosecution used against African-American jurors, or
> whether the jurors possessed race-neutral characteristics that would disqualify
> them from service or render them undesirable jurors. . . . In the absence of any
> supporting evidence . . ., the petitioner's bare assertion that the prosecution
> eliminated all African-Americans from the jury is not sufficient to establish an
> inference of discrimination. *See Overton*, 295 F.3d at 279-80 (because
> petitioner failed to fully develop the facts before the trial judge, "[w]e cannot
> say, on this record, that the trial judge's refusal to implement *Batson's* process
> for testing each questioned challenge midway in the process was an
> unreasonable application of the *Batson* requirements"); *see also* 28 U.S.C. §
> 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in
> State court proceedings, the court [on a habeas petition] shall not hold an
> evidentiary hearing on the claim unless the applicant shows that . . . the claim
> relies on . . . a new rule of constitutional law . . . or . . . a factual predicate that
> could not have been previously discovered").

*Id.*

### e.        Failure to Object to Court's Statement During Voir Dire

During voir dire, the trial judge made the following remarks:

> This is a criminal trial.  At a criminal trial, all twelve jurors have to agree
> on each crime as to a verdict of guilty or not guilty.  Now, we don't want
> anyone on this jury that is going to listen to the evidence, listen to my
> explanation of the law, go back to the jury room and say to the other eleven
> jurors, you know, my mind is made up and nothing will ever change it.  So why

don't you eleven jurors, you know, my mind is made up and nothing will ever change it.  So why don't you eleven discuss the case and when you come around to my way of thinking, let me know and we'll go out and tell the judge that we reached a unanimous verdict.  We don't want anyone as closed minded as that.

On the other hand, we don't want anyone that's going to listen to the evidence, listen to the law and go back into that jury room and say you know, I've never been very good at this kind of a thing.  Why don't you eleven make up your mind and whatever you think is the right thing to do and whatever you decide, I'll just go along with that.  We don't want anyone as weak-minded as that.

We are selecting you because we want you to be active participants in listening to the witnesses, judging their credibility, and participating the jury deliberations.

(TT. at 61-62).

Petitioner claimed, both in his amended habeas petition, and in his section 440.10 motion, that his trial counsel was ineffective for not objecting to this statement because it impermissibly shifted the burden of proof to the defense.  As discussed above, the trial judged found this claim in the section 440.10 motion procedurally barred because it was not raised on direct appeal.  The trial court also denied the claim of ineffective assistance on the merits, in the alternative.  The denial of this claim by the state court was not contrary to or an unreasonable application of the applicable federal standards under *Strickland*.

Trial counsel was not ineffective for failing to object to the court's statement on jury deliberations during voir dire because it did not, as petitioner claims, address the burden of proof, much less shift that burden to the defendant.  This statement merely instructed the jurors that they should give fair consideration to each other's views

56

before reaching a personal conclusion as to the defendant's guilt or innocence.  During the final charge to the jury, the trial judge made the same point, albeit less colloquially.[33]  At other times during voir dire and during the final charge, the court clearly and properly instructed the jury that the defendant was presumed innocent, that the People were required to prove petitioner's guilt beyond a reasonable doubt, that the burden of proof never shifts from the People to the defendant, and that the defendant had no burden to prove anything.  (TT. at 68-70, 469-470).  Considered as a whole, the court's instructions were not objectionable.  *See, e.g., People v. Bowen*, 134 A.D.2d 356, 520 N.Y.S.2d 834 (2d Dept. 1987) (pre-deliberation instruction that the jurors should listen to each others' argument with an open mind was entirely appropriate); *People v. Gonzalez*, 262 A.D.2d, 694 N.Y.S.2d 3 (1st Dept. 1999) (pre-deliberation instructions which addressed the general nature of deliberations and encouraged jurors to discuss and share their views was proper, even though court did not add that each juror was to maintain conscientiously held beliefs).

The instructions, provided before deliberations began, were not improperly "coercive," in that they did not tend to coerce undecided jurors into reaching a verdict by "abandoning without reason conscientiously held doubts."  *United States v.*

---

[33] "It is your duty as jurors to make every honest and sincere effort to arrive at a unanimous verdict on each one of these crimes in accordance with the evidence that has been submitted to you.  Each of you should reach your own judgment in accordance with your own conscience.  To do that, there must be free, frank and open discussion of the evidence by the jurors.  Each of you has the duty of giving the other jurors the benefit of your own opinion and a corresponding duty to give careful consideration to the view and opinions of your fellow jurors." (TT. at 493).

*Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991). *Allen*[34]-like charges about the nature of deliberations which are given during initial instructions, are less likely to be coercive than supplemental charges given in response to an apparent jury deadlock. *Johnson v. Poole*, 02 Civ. 5349, 2003 WL 118505, at *3-4 (S.D.N.Y. Jan. 14, 2003) (denying habeas relief based on claim that pre-deliberation *Allen*-like charge violated petitioner's due process rights)  (citing, *inter alia*, *United States v. Malizia*, 503 F.2d 578, 583 (2d Cir. 1974) (pre-deliberation *Allen*-like charge was not coercive).  *See also United States v. Fermin*, S3 91 Cr. 634, 1993 WL 17442, at *9 (S.D.N.Y. Jan. 21, 1993), *rv'd on other grounds*, 32 F.3d 674 (2d Cir. 1994) (*Allen*-like charge given before deliberations began, and twice after the jury appeared to be deadlocked, was not coercive ).

### f.    Alleged Bolstering of Police Officer/Victim

Petitioner contends that defense counsel was ineffective because he allowed the prosecutor to "bolster" Officer Kelly as a truthful and heroic witness.  As noted above, petitioner did not present this claim in state court and it is, therefore, unexhausted. Moreover, the claim should be deemed procedurally barred because petitioner no longer has a viable state-court remedy with respect to this claim.

This claim of ineffective assistance would also be subject to dismissal on the merits because it is vague and conclusory, based on the citations of authority above.[35]

---

[34] *Allen v. United States*, 164 U.S. 492 (1986).  An "*Allen*" charge typically means a supplementary jury charge to encourage a unanimous verdict in the face of an apparent deadlock.

[35] As noted above, the lower courts in the Second Circuit have articulated two standards to determine whether a claim should be dismissed on the merits under 28 U.S.C. § 2254(b)(2),

Although petitioner alleges that the prosecutor "repeatedly bolstered" Officer Kelly's testimony as truthful and portrayed him as a hero, petitioner provides no citations to the trial record where such alleged prosecutorial misconduct occurred.  To the contrary, the direct examination of Officer Kelly and the prosecutor's arguments with respect to him constitute appropriate efforts to prove the elements of the crimes charges without prejudicial appeals to jury sympathies.  Moreover, defense counsel's cross-examination of Officer Kelly and his arguments reflect a reasonable trial strategy of bringing out the facts helpful to the defense without gratuitous attacks on a police officer that could well alienate the jury.

## IV.   Certificate of Appealability

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may be issued only if the applicant has made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  *See Miller v. Cockrell*, 537 U.S. 322, 326 (2003).  Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

**WHEREFORE**, based on the findings above, it is

---

notwithstanding the failure to exhaust.  *See Hernandez v. Conway*, 485 F. Supp. at 273 n.1.  This claim of ineffective assistance of counsel would be subject to dismissal on the merits as either patently frivolous or clearly unmeritorious.  Accordingly, this court does not need to resolve which competing standard should apply.

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


**Dated:  June 16, 2010**


Hon. Andrew T. Baxter
U.S. Magistrate Judge